**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOYCE C.,**[1] | ) | |
| | ) | **No. 19 CV 8514** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **KILOLO KIJAKAZI,**[2] **Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **September 20, 2021** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Joyce C. seeks disability insurance benefits ("DIB") based on her claim that diabetes, hypertension, degenerative disc disease, osteoarthritis, and obesity prevent her from engaging in full-time work. Before the court are the parties' cross motions for summary judgment. For the following reasons, Joyce's motion is denied, and the government's is granted:

**Procedural History**

Joyce filed her DIB application in August 2015 alleging a disability onset date of November 23, 2013. (Administrative Record ("A.R.") 15, 248-51.) The government denied her application initially and on request for reconsideration. (Id. at 15, 99-110, 112-29, 137.) Joyce requested and received a hearing before an

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the claimant's first name and last initial throughout this opinion to protect her privacy to the extent possible.

[2] Kilolo Kijakazi has been appointed Acting Commissioner of Social Security. As such, she is automatically substituted as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

administrative law judge ("ALJ"), (id. at 149-51, 167-95), and in June 2018 she appeared for a video hearing with her attorney and a vocational expert ("VE"), (id. at 40-98. In November 2018 the ALJ issued a decision finding that Joyce was not disabled. (Id. at 15-33.) When the Appeals Council declined review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Joyce then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. (R. 6); *see also* 28 U.S.C. § 636(c).

## Facts

Joyce worked in social services and counseling until November 2013, when she stopped working because of pain, according to her, resulting from degenerative disc disease, neuropathy, deep vein thrombosis, and arthritis. (A.R. 363.) She also suffers from sleep apnea, uncontrolled type-2 diabetes, depression, and obesity. (Id.) As a result of her impairments, she has difficulty walking, sitting, standing, sleeping restfully, and "perform[ing] nearly any kind of physical activity." (Id. at 363-65.) She submitted documentary and testimonial evidence to support her DIB claim.

### A.    Medical Evidence

In April 2013, before her alleged disability onset date, Joyce visited treating physician Dr. Eden Brandon, complaining of left shoulder pain. (A.R. 386.) Dr. Brandon diagnosed her with tenosynovitis of the left shoulder and hypertension.

(Id. at 388.)  An MRI of the shoulder showed tendinosis, osteoarthritis, and bursitis. (Id.)

In January 2015 Joyce sought treatment from Dr. Brandon for a possible stroke, but there was no evidence of "acute pathology or stenosis."  (Id. at 908.) Joyce reported knee pain, and an x-ray revealed osteoarthritis.  (Id.)  She was described as having "[n]o physical disability," and her activities of daily living were noted to be "normal."  (Id. at 909.)  On examination she had no neck pain, muscle aches, joint stiffness, or knee swelling, and her back and neurological functioning were normal.  (Id. at 909-10.)  She was noted to be overweight.  (Id. at 909.)

In March 2015, Joyce was evaluated in the ER for chest pain, and she reported that her right leg "is always somewhat swollen."  (Id. at 536.)  But her examination revealed normal range of motion, "[g]rossly normal" neurological findings, and no lymphadenopathy.  (Id. at 540, 544.)

In July 2015 Joyce was treated for uncontrolled diabetes.  (Id. at 484.)  She reported "worsening paresthesia[]" related to her peripheral neuropathy.  (Id.) Joyce denied sleep apnea and despite experiencing right heel tenderness, she had no edema, wounds, or sores.  (Id. at 487.)  Her neurological functioning was "[i]ntact and grossly nonfocal."  (Id.)

The following month Joyce sustained chest and left knee injuries in a car accident.  (Id. at 611-12.)  Her bilateral lower extremities were negative for deep vein thrombosis and her laboratory tests were "unremarkable."  (Id. at 612.)  On examination the range of motion in her back and neck was normal without

3

tenderness. (Id. at 606, 612, 617.) She had "mild tenderness over left knee joint and left popliteal fossa," but her knee was distally intact. (Id.)

Joyce underwent a consultative examination in November 2015, during which she reported blood clots, headaches, hypertension, diabetes, right knee pain, back pain, and a history of mental illness. (Id. at 696-704.) A review of systems was "unremarkable" with no lymphadenopathy, neck tenderness, or edema. (Id. at 698-99.) Joyce had "mild difficulty" performing toe, heel, and tandem walking and "moderate-to-severe difficulty" squatting. (Id. at 699.) Her lumbar spine range of motion was decreased. (Id.) She had normal gait, straight leg raise tests, strength in her bilateral upper and lower extremities, and sensation. (Id.) Her grip strength was 5/5 in both hands and dexterity was intact bilaterally. (Id.)

In December 2015 Joyce fell while getting out of the shower and reported right foot, neck, and lower back pain. (Id. at 744-45.) An x-ray revealed "[m]ild multilevel degenerative facet arthropathy from L3 to S1," no spondylosis, no focal lesion, and normal soft tissues. (Id. at 751.) On examination Joyce had lumbar tenderness but full range of motion in all extremities and no edema. (Id. at 749.) She had tenderness but no "obvious swelling" in her right foot. (Id.) An x-ray showed mild degenerative changes and soft tissue swelling. (Id. at 750.)

Joyce fell down some stairs in May 2016 and injured her back, left shoulder, and foot. (Id. at 1547, 1549.) An examination showed that she had a steady gait, normal range of motion, and no back tenderness. A few months later, in August 2016, Joyce sought emergency treatment for right arm and neck pain and was

diagnosed with acute cervical radiculopathy. (Id. at 1493-95.) An October 2016 cervical spine x-ray showed degenerative disc disease and foraminal narrowing. (Id. at 1488.) Imaging of her cervical and lumbar spine in December 2016 showed mild degenerative changes. (Id. at 1389, 1391-92.) A February 2017 MRI of her cervical spine revealed degenerative changes and bilateral foraminal narrowing. (Id. at 1393-94.) And an April 2017 MRI of her lumbar spine showed mild degenerative changes, with no significant disc protrusion or spinal stenosis. (Id. at 1369.) Joyce was diagnosed with cervical spondylosis and lumbar stenosis with neurologic claudication that same month, and she underwent a cervical spine foraminotomy and lumbar spine laminectomy. (Id. at 1064, 1077.)

After her surgery, Joyce participated in physical therapy. (Id. at 1052-64.) She also used a walker to move around. (Id. at 1053, 1055-56, 1058.) In late April 2017 Joyce tripped and fell and sought emergency treatment. (Id. at 1315.) Her neurological functioning was found to be normal, and she had a "steady gait" with a cane. (Id. at 1317.) In May 2017 Joyce had "improved right leg and arm strength." (Id. at 1378.)

Joyce visited a hematologist for deep vein thrombosis in March 2018. (Id. at 1590-93.) She had normal gait and no decreased range of motion or sensory issues. (Id. at 1590.) In April 2018 Joyce was prescribed a four-prong cane as a result of osteoarthritis of the knee. (Id. at 1594.)

**B.      Joyce's Testimony**

Joyce testified that she has a bachelor's degree and worked in a mental health nursing home as a caseworker.  (A.R. 46, 49, 51.)  She stopped working in November 2013 because she experienced back pain and could not sit or stand for prolonged periods.  (Id. at 46.)  Thereafter, she began caring full time for her mother, who was on dialysis and suffered from dementia.  (Id. at 48.)  Although she sent out resumes after November 2013, Joyce testified that she was "80% focused on [her] mother."  (Id. at 53.)  In 2014 she started selling cosmetics but had difficulty standing and lifting products.  (Id.)

Joyce testified that she can sit for 45 minutes, stand for 10 minutes, and walk for 30 minutes.  (Id. at 69, 73.)  She ices her back or uses a heating pad and takes ibuprofen to help with her back pain.  (Id. at 69-70.)  She elevates her legs because of neuropathic tingling and numbness in her legs and feet.  (Id. at 71-73, 75.)  She also alternates positions every hour to alleviate pain.  (Id. at 74-75.)  Joyce began using a four-prong cane about two months before the hearing.  (Id. at 65, 76.)

Joyce said she takes care of herself and her pet during the day.  (Id. at 65.)  Her husband shops for groceries, and she rarely drives.  (Id. at 67.)  She can wash dishes, vacuum, and clean the house.  (Id. at 70.)  In support of her application, Joyce's daughter and husband[3] submitted function reports.  (Id. at 293-304, 329-38.)

---

[3]  At the time of the function report submission, Joyce had not married her fiancé, but they were married by the time of the hearing before the ALJ.  (A.R. 31, 64.)  For the sake of clarity, the court refers to the fiancé as her husband in this opinion.

**C.    VE's Testimony**

A VE also testified at Joyce's hearing and described her prior work as caseworker and admissions clerk, both classified as sedentary work. (A.R. 93-94.) The ALJ asked the VE whether a hypothetical individual could perform Joyce's past work if she had a residual functional capacity ("RFC") for sedentary work with the following limitations: occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes, or scaffolds or working at unprotected heights; and avoiding concentrated exposure to extreme temperatures and vibrations.  (Id. at 94.)  The VE responded that such hypothetical person could perform Joyce's past work.  (Id.)

**D.    ALJ's Decision**

The ALJ engaged in the standard five-step evaluation process in considering Joyce's DIB claim.  *See* 20 C.F.R. § 404.1520(a).  At steps one and two the ALJ found that Joyce had not engaged in substantial gainful activity since her alleged onset date of November 23, 2013, and that she suffers from severe impairments of diabetes, hypertension, degenerative disc disease of the lumbar and cervical spine, status post spinal surgery, osteoarthritis of the left knee, and obesity. (A.R. 17.) She also suffers from medically determinable impairments of anxiety and major depressive disorder and non-severe impairments of plantar fasciitis, blood clots, deep vein thrombosis, neuropathy, tenosynovitis of the left shoulder, and migraines. (Id. at 18-19.)  At step three the ALJ found that Joyce's impairments are not of listings-level severity.  (Id. at 22-23.)

Before turning to step four, the ALJ determined that Joyce retained an RFC for sedentary work, but that she was limited to: occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; never working at unprotected heights; and avoiding concentrated exposures to extreme temperatures and vibration. (Id. at 23.) In explaining her assessment, the ALJ wrote that the medical and other evidence of record did not support Joyce's claim that her impairments were so severe that she was unable to continue working. (Id. at 25-32.) At steps four and five, the ALJ concluded that Joyce could perform her past relevant work and that she was not disabled. (Id. at 32-33.)

## Analysis

Joyce argues that the ALJ erred by: (1) improperly weighing her treating physician's opinions; (2) incorrectly assessing her RFC; and (3) wrongly rejecting statements regarding her subjective symptoms. In reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing

reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

## A.    Treating Physician's Opinions

Joyce argues that the ALJ erred by improperly weighing the opinions of Dr. Brandon, her treating physician. (R. 21, Pl.'s Br. at 6-10.) A treating source's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence."[4] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). "Once contrary evidence is introduced, however, a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate." *Ray v. Saul*, ___ Fed. Appx. ___, 2021 WL 2710377, at *2 (7th Cir. June 30, 2021) (internal citation omitted).

Dr. Brandon opined on March 31, 2016, that Joyce suffers from type-2 diabetes, hypertension, multiple deep vein thromboses, low back pain, osteoarthritis of the knee, neuropathy, depression, headaches, chest pain, and plantar fasciitis. (A.R. 1595.) As a result of Joyce's impairments, Dr. Brandon limited her to sitting for 45 minutes at a time, standing for 20 minutes at a time, and alternating positions "at will" during the workday. (Id. at 1596 (emphasis omitted), 1600.) Dr. Brandon opined that Joyce requires unscheduled breaks every 45 minutes for 10 to 15 minutes, and that she needs to elevate her legs waist high for eight hours in a

---

[4] On January 18, 2017, new regulations issued, eliminating the treating physician rule for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520(c). However, because Joyce filed her DIB claim on August 19, 2015, (A.R. 15), the treating physician rule applies here.

workday but does not need a cane.  (Id. at 1596-97, 1600-01.)  She can grasp, turn, and twist objects up to 33% of the time, and reach overhead up to 5% of the time. (Id.)  Dr. Brandon added that Joyce would be off task 20% of the workday and miss more than four workdays a month.  (Id. at 1598, 1602.)

The ALJ assigned "little weight" to Dr. Brandon's opinions because they were "not consistent with the record."  (Id. at 30.)  In so finding, the ALJ relied on objective medical evidence showing that Joyce's 2014 to 2016 physical examinations were "unremarkable, with normal motor or neurological functioning and only occasional ankle edema."  (Id.)  The ALJ cited, for example, a December 2015 CT scan of the brain that was "unremarkable."  (Id. (citing id. at 401, 487 (July 2015 record reporting neurological functioning was "[i]ntact and grossly nonfocal")).) Likewise, in December 2014 Joyce's head and neck examination was "unremarkable" with no signs of lymphadenopathy.  (Id. (citing id. at 511).)  March 2015 records show "[g]rossly normal" neurological functioning with "negative" review of systems, except for chest pain.  (Id. (citing id. at 544, 566, 606 (August 2015 record reporting normal range of motion, strength, and reflexes, along with knee and calf pain with distal functions intact)).)  And in April 2016 Dr. Brandon herself noted that Joyce had normal motor function, range of motion, and strength. (Id. (citing id. at 1561).)

The ALJ found Dr. Brandon's opinions "somewhat consistent" with a sedentary RFC but determined the record did not support more restrictive limitations.  (Id.)  The ALJ was also unable to find any evidence to support the leg-

elevation or the hand-restriction opinions. (Id.) The ALJ noted that Dr. Brandon issued her opinions before Joyce underwent spinal surgery, (id. (citing id. at 1077-79 (noting that Joyce underwent surgery in April 2017 after suffering from back and right leg pain for a year))), which resulted in "improv[ed] right leg and arm strength, with normal (5/5) upper and lower extremity strength," (id. (citing id. at 1378)). Insofar as Dr. Brandon's opinions related to Joyce's deep vein thrombosis, the ALJ noted that this impairment occurred "long before her alleged onset date" and was managed with medication. (Id.) Similarly, although an MRI showed tendinosis, osteoarthritis, and bursitis in the left shoulder, the ALJ found that Joyce was not seeking treatment for this impairment and had not reported shoulder pain since 2013. (Id.) Finally, the ALJ determined that Joyce's report of pain having only "mild effect on her concentration" undermines Dr. Brandon's opinion that Joyce would be off task 20% of the time. (Id.)

The ALJ provided "good reasons" for assigning limited weight to Dr. Brandon. *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). She reasonably assessed objective medical evidence and determined that Dr. Brandon's opinions were not consistent with the record. *See Fair v. Saul*, 853 Fed. Appx. 17, 21-22 (7th Cir. 2021). She granted "greater weight" to the state agency physicians, Drs. Bharati Jhaveri and Douglas Chang, who opined that Joyce was capable of performing light work with occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolds and no exposure to extreme temperatures, vibrations, and hazards. (A.R. 29 (citing id. at 105-08, 124-28)); *see also Fair*, 853

11

Fed. Appx. at 22 ("[A]n ALJ properly considers all the evidence, including the opinions of other physicians, to determine whether a treating physician's opinion is supported by the record."). The ALJ assigned their opinions "partial weight" because she found that medical evidence post-dating their opinions supported a sedentary RFC and greater exertional limitations. (A.R. 29-30.) Given this record, substantial evidence supports the ALJ's evaluation of Dr. Brandon's opinions. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021).

Joyce argues that the ALJ improperly rejected Dr. Brandon's opinions because she failed to analyze evidence that contradicts her own opinion evaluation. (R. 21, Pl.'s Br. at 7-10.) But as the government points out, the ALJ considered evidence cited by Joyce and did not find it sufficient to support the severe restrictions Dr. Brandon adopted. (R. 31, Govt.'s Mem. at 5 (citing A.R. 21, 26).) As an example, Joyce cites January 2015 treatment records showing she had "decreased pinprick on the right side of her body and presented with right sided weakness upon examination." (R. 21, Pl.'s Br. at 7 (citing A.R. 403, 407).) Earlier in her decision the ALJ considered these examination findings, which were normal, "except decrease[d] pinprick sensation on the right side of her body." (A.R. 21 (citing id. at 401, 403, 415-19).) The ALJ explained that the same records indicate that Joyce had not suffered from a stroke and that her examinations were otherwise normal.[5] (Id.) Where, as here, the ALJ reasonably assessed the evidence, the court

---

[5] Joyce also alleges that a November 2015 consultative examination showed she had "mild difficulty with the toe-walk maneuver, heel walking, and tandem walking" and "moderate difficulty" squatting. (R. 21, Pl.'s Br. at 7 (citing A.R. 699).)

may not reweigh the evidence or substitute its judgment for the ALJ's. *See Deborah M.*, 994 F.3d at 788.

Joyce next challenges the ALJ's rejection of Dr. Brandon's opinions because they were submitted before Joyce's April 2017 spinal surgery. (R. 21, Pl.'s Br. at 8 (citing A.R. 30).) Joyce contends that the ALJ did not "explain why this fact negated" the opinions, especially since the surgery occurred well after her 2013 onset date. (Id.) But the ALJ found that post-surgery treatment records are inconsistent with Dr. Brandon's opinions because they show improvement, normal strength, and "intact physical functioning." (A.R. 30.) Joyce asserts that her spinal surgery did not relieve her back pain or symptoms, citing her hearing testimony in support. (R. 21, Pl.'s Br. at 8 (citing A.R. 71).) The ALJ cited record evidence, however, showing that in October 2017 Joyce reported improved neck pain, and while she continued to have lower back pain that worsened with prolonged standing, she had no sitting limitations. (A.R. 28, 1580.) As for the time period preceding the surgery, the ALJ also cited evidence that contradicts Dr. Brandon's opinions. (Id. at 25-28.) The court finds that the ALJ's explanation was sufficient to allow a "reasonable mind [to] accept as adequate" her conclusion that Dr. Brandon's opinions were not consistent with the record. *Biestek*, 139 S. Ct. at 1154.

---

The ALJ discussed this examination, noting that Joyce "had moderate to severe difficulty squatting, and mild difficulty performing toe and heel walking." (A.R. 26 (citing id. at 699).) But because the examination showed no difficulty ambulating, decreased range of motion in the lumbar spine but normal range of motion in the cervical spine, and normal gait, straight leg raise tests, strength, and sensation, the ALJ concluded that Joyce had "intact physical functioning." (Id.)

Joyce asserts that the ALJ further erred by finding a lack of support for leg elevation, hand, and off-task limitations, contrary to Dr. Brandon's opinions. (R. 21, Pl.'s Br. at 8-9.) Joyce cites records that she says support Dr. Brandon's restrictions. (Id.) For example, Joyce refers to treatment records noting leg swelling and edema, (id. at 8), to support Dr. Brandon's opinion that Joyce would need to elevate her legs waist-high the entire workday, (A.R. 1596). But the ALJ considered these symptoms and reasonably concluded the evidence did not warrant the severe limitations Dr. Brandon imposed. Indeed, the ALJ noted that from December 2014 to November 2015 Joyce experienced "right leg edema on one occasion" but otherwise had "normal range of motion and no edema with normal gait, coordination, and strength." (Id. at 26.) In December 2015 Joyce had "tenderness in her right foot, but no obvious swelling." (Id.) As of August 2016, Joyce had "full range of motion in her extremities without edema and intact sensation and strength." (Id. at 27.) Again, from July 2017 to January 2018, Joyce experienced "occasional ankle edema" but had "no tenderness and otherwise intact physical functioning." (Id. at 28.) Shortly thereafter, in March 2018, Joyce had "no tenderness or swelling and normal range of motion without obvious weakness," along with "intact sensation with normal gait." (Id. (emphasis in original).) The ALJ reasonably concluded that these findings did not support Dr. Brandon's significant functional limitations.[6] (Id. at 30.)

---

[6] Joyce argues that to the extent not wearing compression socks had any bearing on the ALJ's decision not to adopt a leg-elevation limitation, the ALJ erred by not asking Joyce for an explanation for her noncompliance. (R. 21, Pl.'s Br. at 16; R. 35,

The same is true with respect to the ALJ's consideration of Dr. Brandon's hand and off-task limitations. The ALJ found that the objective medical evidence did not support restrictions on the use of Joyce's hands. (Id.) For support the ALJ cited records showing: "[i]ntact and grossly nonfocal" neurological functioning, (id. at 487); and "grip strength [of] 5/5 in both hands," the ability to "grasp and manipulate the objects" and "close both fists" without difficulty, intact dexterity bilaterally, and normal range of motion in both fists and wrists, (id. at 699, 1475). As to Dr. Brandon's 20% off-task restriction, the ALJ found that the record supported only mild limitations on concentration. (Id. at 30 (citing id. at 1031 ("[m]ild" effect of pain on concentration), 1040-41 (same)).) Insofar as Dr. Brandon's off-task opinion was based on an alleged need for extra breaks because of fatigue, the ALJ found that Joyce was not treated for sleep apnea or poor sleep and that she later denied sleep issues. (Id. at 21-22 (citing id. at 678 (October 2015 record noting that Joyce's sleep apnea "resolved with weight reduction and tonsillectomy"), 1548 (May 2016 record reporting that Joyce sleeps seven to eight hours daily)).) The court finds that the ALJ grappled with the evidence and supported her evaluation with substantial evidence.

Joyce further argues that the ALJ did not consider the required factors in 20 C.F.R. § 404.1527 when deciding that Dr. Brandon's opinions were not entitled to

---

Pl.'s Reply at 8.) The government correctly points out that the ALJ rendered her compression socks finding at step two when determining that Joyce's deep vein thrombosis was not a severe impairment, and Joyce does not dispute that finding. (See R. 31, Govt.'s Mem. at 13 n.3.) Additionally, Joyce offered no evidence showing that her noncompliance related to an inability to afford such treatment. (Id.)

controlling weight. (R. 21, Pl.'s Br. at 9-10.) In determining how much weight to give a medical opinion, an ALJ generally considers the length, nature, and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion with the record as a whole, and the physician's degree of specialization. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). An ALJ need not explicitly discuss each factor but must "minimally articulate" her reasons for discounting the opinion. *Collins v. Berryhill*, 743 Fed. Appx. 21, 25 (7th Cir. 2018). Joyce claims that the ALJ never considered Dr. Brandon's treatment relationship with her or the supportability of Dr. Brandon's opinions. (R. 21, Pl.'s Br. at 9-10.) But here the ALJ reasonably focused on how Dr. Brandon's opinions were inconsistent with the objective medical evidence. (A.R. 30.) In any event, she noted that Dr. Brandon was Joyce's treating physician and considered Dr. Brandon's lack of narrative explanation, as well as her treatment records, in determining that the record as a whole did not support significant functional limitations. (Id. at 25-30.) The ALJ satisfied the minimal articulation standard. *See Harris v. Saul*, 835 Fed. Appx. 881, 885 (7th Cir. 2020).

**B.    RFC Assessment**

Joyce challenges the ALJ's RFC assessment, arguing that the ALJ did not adequately explain her findings. (R. 21, Pl.'s Br. at 10-23.) "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The ALJ has "final responsibility" for assessing a

16

claimant's RFC and "need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021) (internal quotations and citation omitted).

Joyce claims that the ALJ rejected Dr. Brandon's opinions and afforded only partial weight to the state agency physicians' opinions, leaving an "evidentiary deficit" for her "middle ground" RFC. (R. 21, Pl.'s Br. at 10-11, 14.) Joyce complains that the ALJ did not support her finding that she could sit for six hours in a workday and stand or walk for no more than two hours. (Id. at 10-11.) But the state agency physicians opined as to the former, (A.R. 106, 124), and Dr. Brandon opined as to the latter, (id. at 1596). While the ALJ found greater restrictions than the state agency physicians, she assessed a sedentary RFC, which involves six hours of sitting in an eight-hour workday. (Id. at 23); *see also* SSR 83-10. Her finding is consistent with the consultants' opinions that Joyce can sit six hours with normal breaks. (A.R. 106, 124.) Likewise, although the ALJ assigned little weight to Dr. Brandon's opinions, she adopted Dr. Brandon's conclusion that Joyce was capable of standing and walking two hours. (Id. at 1596.) The ALJ supported these aspects of her RFC with substantial evidence. (See id. at 25-30.)

Joyce also argues that the ALJ failed to explain why she did not assess limitations for alternating positions, elevating her legs, using her arms and hands, taking extra breaks, and maintaining concentration, as Dr. Brandon opined. (R. 21, Pl.'s Br. at 11-20.) Joyce cites evidence of record to support her alleged need for such restrictions. (Id.) But this court may not reweigh evidence or substitute its judgment for the ALJ's, *see Deborah M.*, 994 F.3d at 788, and as explained in the

17

preceding section, the ALJ supported with substantial evidence her opinion evaluation and her findings that leg-elevation, hand, and off-task limitations were not warranted, (A.R. 25-30). As such, the ALJ was not required to incorporate those limitations into the RFC. *See Yurt*, 758 F.3d at 857.

As to alternating positions, Joyce asserts that the record supports such a limitation. (R. 21, Pl.'s Br. at 11-14.) She cites testimony and evidence that she says shows she must change positions. (Id.) The ALJ considered Joyce's testimony and evidence regarding her back impairment, related pain, and surgery, as well as her deep vein thrombosis and diabetic neuropathy, but found Dr. Brandon's alternating-positions limitation and other findings inconsistent with the record. (A.R. 25-30.) The ALJ also reasonably relied on the state agency physicians' opinions that Joyce can sit six hours with normal breaks. (Id. at 106, 124.)

With respect to overhead reaching limitations, Joyce contends that despite acknowledging such problems, the ALJ failed to account for reaching restrictions in her RFC. (R. 21, Pl.'s Br. at 17-18.) Joyce cites evidence that she suggests supports her conclusion. (Id.) But this court may not second guess the ALJ's decision by reweighing evidence, *see Deborah M.*, 994 F.3d at 788, and the ALJ considered Joyce's testimony that her neuropathy prevents her from reaching above her shoulders, and that her shoulder pain makes it difficult to move. (A.R. 24.) The ALJ also noted Joyce's April 2013 diagnosis of tenosynovitis of the left shoulder along with evidence of tendinosis, osteoarthritis, and bursitis. (Id. at 25.) The ALJ discussed Joyce's May 2016 report that she fell down some stairs and injured her

18

back, left shoulder, and foot.  (Id. at 27.)  And the ALJ cited October and November 2016 treatment records showing decreased range of motion in her arm and "mild tenderness" in her hand.  (Id.)  Nevertheless, the ALJ relied on medical evidence that Joyce had "normal range of motion of her extremities with normal strength and sensation," "5/5 hand strength," and conservative treatment with medication and exercises.  (Id. at 25, 27.)  The ALJ thus concluded that the objective medical evidence was "not suggestive of substantial limitation," (id.), and the court will not disturb that conclusion.

Regarding her difficulty concentrating, Joyce contends that because the ALJ found a mild limitation in her ability to maintain concentration, she was required to account for this limitation in the RFC.  (R. 21, Pl.'s Br. at 20-22.)  The ALJ explained, however, that state agency psychologists Drs. Steven Fritz and Kiela Bolden found Joyce's mental impairments "non-severe" and assessed no non-exertional limitations.  (A.R. 20 (citing id. at 103-05, 121-24).)  Dr. Fritz noted that Joyce had "intact cognition, memory and thought processing skills sufficient for multi-step tasks."  (Id. at 105.)  Similarly, Dr. Bolden considered Joyce's claims that she "might need verbal instructions repeated" but disagreed, finding that Joyce "could follow written and verbal instructions."  (Id. at 122.)  Dr. Bolden also considered subjective allegations that Joyce had difficulty completing tasks and concentrating but found that the objective evidence did not support the severity claimed.  (Id.)  The ALJ granted "great weight" to the state agency psychologists' opinions because Joyce's "lack of mental health treatment" and "predominantly

unremarkable mental status examinations, with active and social lifestyle," supported them. (Id. at 20.) Joyce does not challenge the ALJ's evaluation of the state agency psychologists' opinions. Given the ALJ's reliance on the state agency psychologists' opinions and other evidence of record showing that no concentration limitation was warranted, there was no error here. *See Brookins v. Saul*, No. 17 CV 6708, 2020 WL 4365909, at *6 (N.D. Ill. July 30, 2020).

Joyce's final challenge to the RFC is that the ALJ erred by posing a hypothetical to the VE regarding off-task time and then failing to incorporate that limitation into the RFC. (R. 21, Pl.'s Br. at 22-23.) An ALJ need only include those limitations supported by the record in the RFC. *See Deborah M.*, 994 F.3d at 791; *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). As explained, the ALJ found no support for an off-task limitation.

## C. Symptom Evaluation

Finally, Joyce argues that the ALJ erred in evaluating her subjective symptom allegations. (R. 21, Pl.'s Br. at 23-26.) But an ALJ's symptom evaluation is entitled to great deference because the ALJ is in the best position to judge credibility. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may reverse a symptom assessment only where it is "patently wrong." *Id.* at 816. Nevertheless, the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and

precipitating pain factors in assessing the severity of the claimant's symptoms, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Here Joyce asserts that the ALJ failed to evaluate properly the symptom allegations submitted by her daughter and husband in their function reports. (R. 21, Pl.'s Br. at 23-25.) Her daughter alleged that pain limited her mother's ability to stand or walk for prolonged periods and sleep through the night. (A.R. 297-304.) She opined that her mother could lift up to 10 pounds, sit or stand for less than 30 minutes, and walk for up to 30 minutes. (Id. at 302.) Joyce's husband alleged that her leg was frequently swollen, and she suffers from foot and back pain. (Id. 331-38.) He opined that Joyce could walk up to 100 yards before needing a break for 20 to 30 minutes. (Id. at 336.)

The ALJ found these statements "generally supportive of [Joyce's] allegations" but not determinative on the issue of whether Joyce is disabled. (Id. at 31.) The ALJ explained that neither source "is medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms" and "by virtue of their relationship to [Joyce], they cannot be considered to be disinterested third party witnesses." (Id.) "Most importantly," the ALJ found that the allegations were "simply not consistent with the preponderance of the evidence," which she summarized as showing "no significant treatment" as of Joyce's alleged onset date, "a good result with surgery for spinal issues that arose

21

several years after her alleged onset date," and well-managed diabetes, hypertension, and obesity without significant deficits. (Id.) Coupled with her activities of daily living and self-reports that conflict with the record, the objective medical evidence did not support the severity of the symptom allegations, according to the ALJ. (Id.)

Joyce argues that the ALJ erred by rejecting the third-party function reports because the sources were not "medically trained" or "disinterested." (R. 21, Pl.'s Br. at 24-25.) Joyce correctly points out that the sources "never made any statements regarding dates or medical signs and symptoms." (Id. at 24.) Furthermore, courts in this district have held that it is improper to reject third-party statements because the source lacks medical training. *See Cynthia H. v. Saul*, No. 19 CV 1962, 2019 WL 6893004, at *3 (N.D. Ill. Dec. 18, 2019); *Dorian W. v. Berryhill*, No. 17 CV 50327, 2019 WL 1572560, at *4 (N.D. Ill. April 11, 2019). The relevant regulation provides that "[o]ther sources may provide information . . . including non-medical sources such as family and friends." SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016). As a result, the ALJ's first two reasons for rejecting the third-party statements do not amount to substantial evidence.

Even a flawed symptom assessment may survive remand, however, where the ALJ "reasonably evaluated [the claimant's] symptoms by considering the requisite factors." *Cynthia H.*, 2019 WL 6893004, at *3. Here the ALJ reviewed in detail the objective medical evidence and found that while it supported a sedentary RFC, it did not preclude all work. (A.R. 25-29.) The ALJ also considered the

efficacy of Joyce's medications and lack of "significant" treatment as of her disability onset date. (Id. at 24-26, 31.) The ALJ further noted a conflict between Joyce's self-reports that she stopped working in 2013 because of back pain and record evidence showing she was laid off and then focused on caring for her mother. (Id. at 20, 31.) Finally, the ALJ found the symptoms reported by Joyce's daughter and husband to be inconsistent with her "fairly active and social lifestyle." (Id. at 31.) These reasons amount to substantial evidence. *See Fanta*, 848 Fed. Appx. at 659-60.

Joyce complains that the ALJ erred by evaluating her daily activities without considering limitations on those activities. (R. 21, Pl.'s Br. at 25-26.) Specifically, Joyce challenges the ALJ's focus on her ability to care for her mother and pets, cook, perform household chores, drive, shop, manage money, pay bills, play guitar, watch television, write, sell cosmetics, socialize with friends, and attend church regularly, without acknowledging her reported limitations. (Id. at 25-26.) But the ALJ considered Joyce's limitations and found they supported a sedentary RFC. (See, e.g., id. at 29, 31.) The ALJ simply disagreed with Joyce that her limitations required "the imposition of more rigorous restrictions." (Id. at 31.) The ALJ was permitted to consider the mismatch between Joyce's daily activities and her alleged symptoms and their severity. *See Green v. Saul*, 781 Fed. Appx. 522, 526-27 (7th Cir. 2019). Despite flaws in the ALJ's symptom evaluation, the ALJ provided enough valid reasons to support a finding that her assessment was not patently wrong. *See Regina P. v. Saul*, No. 19 CV 3155, 2020 WL 4349888, at *5 (N.D. Ill. July 29, 2020).

## Conclusion

For the foregoing reasons, Joyce's motion for summary judgment is denied, and the government's motion is granted.

ENTER:

**Young B. Kim**
**United States Magistrate Judge**